UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ARPINE AKOPYAN,<br><br>　　　　　　　　　Plaintiff,<br>　　v.<br><br>SECOND JUDICIAL DISTRICT COURT,<br>JOEY ORDUNA HASTINGS,<br><br>　　　　　　　　　Defendants. | Case No. 3:15-cv-00593-MMD-WGC<br><br>ORDER<br><br>(Def's Motion to Dismiss – ECF No. 9;<br>Def's Motion for Summary Judgment –<br>ECF No. 32) |

**I.　SUMMARY**

Before the Court are two motions filed by Defendant Second Judicial District Court ("SJDC"): Motion to Dismiss (ECF No. 9) and Motion for Summary Judgment ("Motion") (ECF No. 32). Plaintiff Arpine Akopyan has responded to both motions (ECF Nos. 12, 34), and SJDC has filed replies (ECF Nos. 13, 35). For the reasons discussed below, the Motion is granted and the Motion to Dismiss is denied as moot.

**II.　BACKGROUND**

The following facts are generally undisputed. Akopyan is of Armenian heritage and a member of the Armenian Apostolic Church. (ECF No. 12-2 ¶¶ 2, 24.) Akopyan was hired by SJDC on October 10, 2013, and began working in a probationary capacity on November 4, 2013. (ECF No. 12-2 ¶ 8; ECF No. 32-1 ¶¶ 2, 4.) During the probationary period, employees may not use vacation leave. (ECF No. 32-1 ¶ 4.) Sometime in November 2013, Akopyan asked to take off January 6, 2014, in order observe Armenian Christmas. (ECF No. 5 ¶ 16; ECF No. 32-1 ¶ 5.) Akopyan's supervisors indicated that she would be allowed to use an accrued sick day to take the day off with pay. (ECF No. 12-2 ¶; ECF No. 32-1 ¶ 5.)

Akopyan accrued one sick day during her first month of work and took that sick day on December 2, 2013, after arriving home late from a long car trip the night before. (ECF No. 12-2 ¶ 33.). This meant that she would only be able to accrue one more sick day before the January 6 holiday.

On the morning of December 31, 2013, Akopyan arrived at work, but sent an email to the Clerk of Court, Joey Orduna Hastings, explaining she was suffering from a cough and chest pain. (ECF No. 34 at 136.) In the email, Akopyan acknowledged that her only remaining sick day was slated to be used for Armenian Christmas on January 6, and asked for guidance, indicating that she was "open to options" including coming in for a half day on January 6. (*Id.*) Hastings emailed Kathy Piccolo, another SJDC employee, and asked her to "look into this." (*Id.*)

Piccolo met with Akopyan and informed her that her only options were to leave for the day and forgo her January 6 time off, or stay and use her accrued sick day for January 6. (*Id.* at 127.) She told Akopyan that unpaid leave was not an option and suggested that "it seemed coincidental that [Akopyan] wanted to go home sick on New Year's Eve" considering Akopyan had a boyfriend in Nevada City. (*Id.*) In a follow up email to Hastings, Piccolo implied that Akopyan was not actually sick. (*Id.*)

Akopyan decided to stay at work. She emailed Hastings informing her of her decision and noting that she wished "concessions could be made today and in general for new employees including leave without pay." (*Id.* at 137.) A few days later on January 2, 2014, Akopyan emailed Hastings again to express her displeasure with the tenor of the December 31 meeting. (*Id.* at 125.) Akopyan listed a number of complaints, including Piccolo's unprofessionalism, the fact that the meeting was closed-door and no other employees were present, the fact that she was accused of faking an illness. (*Id.*)

At the end of the workday on January 2, Akopyan was summoned to a meeting with Hastings and Assistant Clerk of Court Julie Wise. (ECF No. 21-1 ¶ 14.) At the meeting Hastings brought up instances of Akopyan arriving late to work and violating the

///

dress code.¹ (ECF No 32-1 ¶ 14.) At the end of the meeting Hastings terminated Akopyan's employment. (*Id.*)

Akopyan filed a Charge of Discrimination against SJDC with the EEOC on June 18, 2014. (ECF No. 12-1 at 4.) The EEOC Complaint alleged discrimination based on religion and national origin, and further alleged retaliation for engaging in protected activity. (*Id.*) She received a Notice of Right to Sue letter postmarked September 8, 2015. (ECF No. 5 ¶ 8.) Akopyan, proceeding *pro se* and *in forma pauperis*, then filed a civil complaint in this Court, alleging her former employer violated Title VII of the Civil Rights Act of 1967 ("Title VII") based on several theories in addition to those raised in the EEOC Complaint. (ECF No. 5.)

On June 23, 2016, the Court dismissed Hastings pursuant to Fed.R.Civ.P. 4(m). (ECF No. 29.) On July 7, 2016, pursuant to a stipulation between the parties, this Court dismissed any claims based on sex, gender, sexual expression, and age. (ECF No. 30, 31.) Akopyan's remaining claims consist of Title VII violations based on three theories: religious discrimination, national origin discrimination, and retaliation for engaging in a protected activity.

SJDC has moved for dismissal of the remaining counts under Fed.R.Civ.P. 12(b)(6) and has also subsequently moved for summary judgment on the remaining claims. Because the Court grants summary judgment, the Court will not address the Motion to Dismiss.

### III. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the

---

¹SJDC has produced a number of emails documenting instances where Akopyan arrived late or made other errors. *See* ECF Nos. 32-3, 32-4, 32-5, 32-6, 32-7. SJDC also produced an email from an IT administrator to Hastings on January 2, the day Akopyan was terminated, informing Hastings that Akopyan had shown up late for work a few days earlier. ECF No. 32-8.

3

pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (*quoting First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

      The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

///

///

## IV. DISCUSSION

### A. Religious Discrimination

"A Title VII religious discrimination claim may be brought under several possible theories, including disparate treatment on account of religion or failure to accommodate religious beliefs." *Bodett v. CoxCom, Inc.*, 366 F.3d 736, 742 (9th Cir. 2004). "Section 703(a)(1) of Title VII of the Civil Rights Act of 1964 requires an employer to make reasonable accommodations to their employees' religious beliefs, unless such accommodations to an employee's religious observance or practice would cause undue hardship." *Hudson v. W. Airlines, Inc.*, 851 F.2d 261, 265 (9th Cir. 1988) Akopyan alleges that SJDC violated Title VII by "refusing to reasonably accommodate [her] religious request." (ECF No. 5 ¶ 23.)

A claim like Akopyan's involves a two-part analysis. First, she must make a prima facie showing that she had a bona fide religious belief which caused a conflict with her duties, that she informed her employer of the conflict, and the employer took an adverse action against her because of the conflict. *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 606 (9th Cir. 2004). An adverse employment action is an action that "materially affect[s] the compensation, terms, conditions, or privileges of . . . employment." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (quoting *Chuang v. Univ. of California Davis, Bd. of Trustees*, 225 F.3d 1115, 1126 (9th Cir. 2000)).

If Akopyan makes out a prima facie failure-to-accommodate case, the burden then shifts to SJDC to show that it "initiated good faith efforts to accommodate reasonably the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship." *Id.* (quoting *Tiano v. Dillard Dep't Stores, Inc.*, 139 F.3d 679, 681 (9th Cir.1998)). Whether an accommodation is reasonable is typically a question of fact. *See Proctor v. Consolidated Freightways Corp.*, 795 F.2d 1472, 1476 (9th Cir.1986) ("[w]hether an employer has met its statutory burden to initiate a good faith effort to accommodate an employee's beliefs is a question

///

of fact"). If an employer has reasonably accommodated an employee's religious needs, the analysis ends. *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68 (1986).

### 1. Prima Facie Case

Akopyan has provided a declaration verifying that she is an Armenian Orthodox Christian, and, as such, she celebrates Christmas on January 6. (ECF No. 12-2 ¶¶ 24, 28, 29.) She further stated, and SJDC agrees, that she informed her supervisors of her need to take the day off on January 6 in order to celebrate Christmas. (*Id.* ¶ 30; ECF No. 32-1 ¶ 5.) However, Akopyan has not produced any evidence to show that she was terminated specifically due to the religious conflict. Akopyan was terminated before the conflict occurred. And there is nothing in the record to support the idea that she was fired because she told her employer she would be observing Armenian Christmas regardless of their decision — which would allow a reasonable juror to conclude that the adverse action was due to her religious conflict. At best the record currently shows Akopyan was terminated, in part, due to interpersonal conflicts stemming from the negotiations around her request for accommodation.

The only relevant evidence that Akopyan has provided on this point is a copy of what appears to be an addendum to her EEOC Complaint, in which she indicates Hastings listed the following three reasons for her termination: 1) tardiness, 2) violating the dress code, and 3) "and now this" — which Akopyan understood to mean her December 31 email.[2] (ECF No. 12-1 at 11-12.) This assertion is not repeated in either of Akopyan's sworn declarations, and is not itself sworn or verified in any way. Even if this vague reference could be considered more than a mere "scintilla of evidence," it is not contained in a source upon which the Court may rely. A Court may not rely on unauthenticated documents either in support of or in opposition to a motion for summary judgment. *Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987).

---

[2]This document was filed in response to SJDC's Motion to Dismiss, rather than its Motion for Summary Judgment. However, courts should consider all evidence in the record in determining whether summary judgment is appropriate. *See, e.g.*, *Campbell v. Hewitt, Coleman & Associates, Inc.*, 21 F.3d 52, 56 (4th Cir. 1994).

In fact, there is little contemporaneous evidence in the record that shows exactly why SJDC decided to terminate Akopyan on January 2. For its part, SJDC argues that Akopyan was terminated "because of repeated errors in her performance, being late to work on several occasions, and because of her attitude." (ECF No. 32 at 3.) SJDC has produced emails between various SJDC employees documenting instances of tardiness and errors (*see, e.g.*, ECF Nos. 32-3; 32-4), and a declaration from Julie Wise recounting those incidents and indicating that Akopyan acted defiantly during their January 2, 2014, meeting. (ECF No. 32-1.) Wise's declaration ends by stating that the January 2 meeting "ended when Ms. Hastings terminated Ms. Akopyan from her employment with the District Court." (*Id.* ¶ 14.) The declaration does not state that Akopyan was fired for the reasons listed above — reasons independent of her request for accommodation — only that those issues were discussed at the meeting. Nor does any other document in the record allow the Court to conclude that the independent reasons were the actual cause of Akopyan's termination rather than post hoc justifications.

In short, the record contains little evidence explaining why the January 2 decision to fire Akopyan was made when it was. The burden to produce this evidence was on Akopyan. She was responsible for establishing a prima facie case that she suffered an adverse action due to her religious conflict. Because she has failed to establish a prima facie case, SJDC's Motion is granted with respect to the religious accommodation claim.

### 2.    Good Faith Efforts to Accommodate

Though Akopyan's claim fails because she did not meet her initial burden of production, the Court must address SJDC's argument in light of SJDC's position. First, SJDC mischaracterizes the accommodation it provided Akopyan. SJDC states that "Defendant granted Plaintiff the day off with pay, instead of having her use time off." (ECF No. 35 at 2.) While this may be an accurate description of the initial agreement reached between the parties in November, it does describe the conflict that led to this suit. Assuming Akopyan's version of events is true, as the Court does on summary

judgment, she fell ill twice and was required to use both of her accrued sick days. The actual accommodation offered by SJDC was not paid time off, but a choice between working while sick and observing Christmas, or going home and working on a religious holiday. SJDC has not provided, nor can the Court find, any case law which suggests such an arraignment is per se reasonable.

While it may well be reasonable, and perhaps preferable, when an employee has available paid sick days, it is not clear that this arrangement remains reasonable if an employee falls ill and must use her sick days for their intended purpose.[3] Though the reasonableness of an accommodation is often a question for a fact finder, in certain circumstances courts have found allowing employees to take unpaid leave in order to avoid a religious conflict was reasonable as a matter of law. *See Reed v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am.*, 569 F.3d 576, 581 (6th Cir. 2009); *E.E.O.C. v. Bridgestone/Firestone, Inc.*, 95 F. Supp. 2d 913, 924 (C.D. Ill. 2000). Had Akopyan met her evidentiary burden, the Court is skeptical that SJDC's argument in response would have prevailed on summary judgment.

### B.  Discrimination based on National Origin

Title VII prohibits employers from discriminating against employees on the basis of national origin. 42 U.S.C. § 2000e-2(a). In order to make out a prima facie case of discrimination on the basis of national origin, a plaintiff must show "(1) [she] belonged to a protected class; (2) [she] was qualified for [her] job; (3) [she] was subjected to an adverse employment action; and (4) similarly situated employees not in [her] protected class received more favorable treatment." *Okeke v. Biomat USA, Inc.*, 927 F. Supp. 2d 1021, 1025 (D. Nev. 2013) (citing *Kang v. U. Lim America, Inc.*, 296 F.3d 810, 818 (9th Cir.2002)).

///

---

[3] SJDC's Employee Manual indicates that sick leave is to be taken when an employee is incapacitated, quarantined, receiving medical treatment, to take care of an immediate family member who is ill, or to deal with a death in one's immediate family. (ECF No. 34 at 48-49.)

Akopyan has only provided evidence to show that she is Armenian and that her colleagues likely knew she was Armenian. She has not provided any evidence that would allow a reasonable juror to conclude that she was qualified for her job or that her termination was related to her nationality. While the Court acknowledges that untangling the sometimes related concepts of nationality and religion, especially in cases where the two may reinforce and help define each other, is difficult, in this case Akopyan has not provided enough evidence to establish a prima facie case for either claim.

Assuming Akopyan adequately stated a claim for national origin discrimination in her complaint, she has failed to "produce specific evidence, through affidavits or admissible discovery material, to show" a genuine dispute. *Bhan*, 929 F.2d at 1409. Therefore, SJDC's Motion is granted with respect to Plaintiff's national origin claim.

### C. Retaliation

An employer cannot retaliate against an employee for "oppos[ing] any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a). To prevail on her retaliation claim, Plaintiff must show: (1) that she engaged in a protected activity; (2) that she suffered an adverse employment action; and (3) that there is a causal connection between the protected activity and the adverse employment action. *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 965 (9th Cir. 2004) "An employee engages in protected activity when she opposes an employment practice that either violates Title VII or that the employee reasonably believes violates that law." *Westendorf v. W. Coast Contractors of Nevada, Inc.*, 712 F.3d 417, 422 (9th Cir. 2013). The protected conduct need not be the sole cause of termination, but it must have been a but-for cause. *Id.* Causation may be inferred from timing alone where an adverse employment action closely follows protected activity. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002).

Akopyan's retaliation claim rests on her January 2, 2014, email. (ECF No. 34 at 13, 125.) The email does not constitute protected activity, even viewing it in the light most favorable to Akopyan. It makes no mention of religious accommodation or

mistreatment based on a protected category. Instead, the email details Akopyan's concerns about how she was treated by a supervisor who believed that she was faking an illness in order to leave work on New Year's Eve. The email expresses Akopyan's displeasure at her supervisor's unprofessionalism and condescension. However, it makes no mention of time off for Armenian Christmas and it does not suggest that Piccolo mistreated her because of her national origin. The closet Akopyan comes to any sort of protected activity in the email is when she writes:

> [Piccolo] questioned my integrity, my honesty, she mocked me, and she intimidated me. She cannot, under any circumstances, talk about my personal life regardless of what she knows about me personally, this is a sensitive issue and I know she's been trained on that topic. I think there are laws against that.

(ECF No. 34 at 125.) But the conduct she identifies is not, in fact, prohibited by Title VII, nor is it reasonable to believe that it was. While it may be rude or against organizational policy to discuss certain aspects of an employee's personal life (in this case whether an employee was dating and whether she was faking an illness to see a boyfriend), it does not violate Title VII. *Compare Westendorf*, 712 F.3d at 422 (though instances of inappropriate sexual remarks did not add up to support plaintiff's hostile work environment claim, complaints about individual remarks were protected activity because it was not unreasonable to think that they did).

Therefore, the Court agrees with SJDC that the January 2 email does not amount to protected activity. SJDC's Motion is granted with respect to the retaliation claim.

**V.     REQUEST TO REOPEN DISCOVERY**

Pursuant to the Court's May 5, 2016, scheduling order, discovery closed in this case on September 12, 2016. (ECF No. 19.) SJDC's Motion for Summary Judgment was filed on September 30, 2016. (ECF No. 32.) Akopyan now seeks additional discovery because she has not had sufficient time to conduct discovery and she wishes to respond to claims made in Julie Wise's declaration, specifically claims that Akopyan acted defiantly during their January 2 meeting. (ECF No. 34 at 14.)

///

Akopyan's request is denied. First, Akopyan does not explain why she was unable to depose Wise during the several months between the entry of the scheduling order and the close of discovery. Second, the Court resolved factual disputes in Akopyan's favor in evaluating SJDC's Motion for Summary Judgment, and therefore did not rely on Wise's testimony about Akopyan's demeanor during the January 2, 2014, meeting. The statements that she claims are false were not part of the Court's analysis.

## VI. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion or reconsideration as they do not affect the outcome of the Motion.

Accordingly, it is hereby ordered that SJDC's Motion for Summary Judgment (ECF No. 32) is granted.

It is further ordered that SJDC's Motion to Dismiss (ECF No. 9) is denied as moot.

The Clerk is ordered to enter judgment in accordance with this Order and close this case.

DATED THIS 19th day of December 2016.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE